**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
*Camden Vicinage*

| | |
|---|---|
| GABRIEL BARRERA ALMONTE and MAYRA MAGADAN MUNOZ; JAMES JACKMAN; NIKI NOLIN; and RICHARD ALLIET; on behalf of themselves and all other similarly situated,<br><br>                        Plaintiffs,<br><br>        v.<br><br>FEDEX CORPORATION; AUTOMOTIVE RENTALS, INC.; HOLMAN FLEET LEASING, LLC; HOLMAN AUTOMOTIVE GROUP, INC.; and ABC CORPORATIONS 1-20<br><br>                        Defendants. | *Document Electronically Filed*<br><br>Civil Action No.: 1:23-cv-03224<br><br>Oral Argument Requested<br><br><br><br>**Motion Day:** September 5, 2023 |

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO**
**PARTIALLY DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

---

Ryan T. Becker
Nathan M. Buchter
**FOX ROTHSCHILD LLP**
Formed in the Commonwealth of Pennsylvania
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103
T: (215) 299-2000 / F: (215) 299-2150
rbecker@foxrothschild.com
nbuchter@foxrothschild.com

*Attorneys for FedEx Corporation,*
*Automotive Rentals, Inc., Holman*
*Automotive Group, Inc., and*
*Holman Fleet Leasing, LLC*

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................ iv

PRELIMINARY STATEMENT .......................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 2

    I.      PLAINTIFFS ........................................................................................................ 2

    II.     DEFENDANTS .................................................................................................... 4

    III.    PLAINTIFFS' CLAIMS AND DEMAND FOR RELIEF ....................................... 4

    IV.    THE ALLEGED ODOMETER FRAUD SCHEME ............................................... 4

    V.     PLAINTIFFS' CLASS ALLEGATIONS ............................................................. 5

STANDARD OF REVIEW ................................................................................................. 6

ARGUMENT ...................................................................................................................... 7

    I.      THE CLASS ACTION CLAIMS ARE NOT VIABLE. .......................................... 7

        A.    Plaintiffs Propose a Class that Improperly Requires Liability Determinations. ..... 8

        B.    Plaintiffs' Proposed Class is not Administratively Feasible. ............................... 12

    II.     THE NJCFA CLAIM (COUNT II) SHOULD BE DISMISSED UNDER CHOICE OF LAW PRINCIPLES. ......................................................................................... 13

        A.    The Third Circuit Routinely Analyzes Choice-of-Law in Motions to Dismiss.... 13

        B.    New Jersey does not have the "Most Significant Relationship" with Plaintiffs' Nationwide Consumer Fraud Claim. ................................................................. 13

        C.    The NJCFA Claim Against FedEx Should be Dismissed Because FedEx is not Headquartered or Based in New Jersey. ............................................................ 19

    III.    PLAINTIFFS' COMMON LAW CLAIMS (COUNTS III & IV) FAIL AS A MATTER OF LAW. 20

        A.    Plaintiffs do not Specify the State Law Applied to Their Unjust Enrichment and Civil Conspiracy Claims. ................................................................................. 20

        B.    New Jersey does Not Recognize a Tort-Based Claim for Unjust Enrichment. .... 21

C.      Plaintiffs Cannot Maintain an Unjust Enrichment Claim Having Pleaded an Adequate Remedy at Law. ................................................................................... 22

D.      Plaintiffs Fail to Allege Facts that Establish All Essential Elements to a New Jersey Unjust Enrichment Claim. ......................................................... 23

E.      Choice of Law Principles Also Mandate the Dismissal of Plaintiffs' Nationwide Unjust Enrichment Claim. ................................................................... 24

F.      The Civil Conspiracy Claim is Duplicative of the Odometer Act Claim. ................ 25

G.      Plaintiffs' Civil Conspiracy Claim Based on an Alleged NJCFA Violations Fails. ................................................................................................. 25

IV.     PLAINTIFFS' DEMANDS FOR EQUITABLE RELIEF FAIL AS A MATTER OF LAW. ............ 26

V.      PLAINTIFFS' DEMAND FOR PUNITIVE DAMAGES FAILS AS A MATTER OF LAW. .......... 27

VI.     ALL CLAIMS AGAINST THE "HOLMAN" DEFENDANTS FAIL AS A MATTER OF LAW BECAUSE THEY ARE ALL BASED ON IMPERMISSIBLE GROUP PLEADING ALLEGATIONS. ................................................................................................. 27

VII.    PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS AGAINST HFL. ................. 29

CONCLUSION ................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437 (D.N.J. 2009) ...................................... 7, 9, 14

*Alexander v. Se. Wholesale Corp.*, 978 F. Supp. 2d 615 (E.D. Va. 2013).................................. 11

*Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282 (D.N.J. 2009).............................................. 14

*Argabright v. Rheem Manufacturing Company*, 201 F. Supp. 3d 578 (D.N.J. 2016) .................. 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 6, 12

*Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959) ............................................................. 26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................... 6, 12

*Block v. Jaguar Land Rover N. Am., LLC*, 2016 WL 3032682 (D.N.J. May 26, 2016)......... 19, 23

*Boyes v. Greenwich Boat Works*, 27 F.Supp.2d 543 (D.N.J. 1998) ............................................. 19

*Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013)............................................................. 8, 10

*Clark v. McDonald's Corp.*, 213 F.R.D. 198 (D.N.J. 2003)......................................................... 8

*Cnty. of Maui, Hawaii v. Hawaii Wildlife Fund*, 140 S. Ct. 1462 (2020) .................................. 21

*Cohen v. Subaru of Am., Inc.*, 2022 WL 714795 (D.N.J. Mar. 10, 2022) ................................... 17

*Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x. 250 (3d Cir. 2010) ..................................... 13

*Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628 (3d Cir. 1989).................................................. 29

*Debjo Sales, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 2015 WL 1969380 (D.N.J. Apr. 29, 2015) .................................................................................................................................... 22

*Debra F. Fink, D.M.D., M.S., PC v. Ricoh Corp.*, 839 A.2d 942 (N.J. Law. Div. 2003)............. 14

*DeFillippo v. Whirlpool Corp.*, 2019 WL 4127162 (D.N.J. Aug. 30, 2019)................................ 14

*Dicuio v. Brother Int'l Corp.*, 2015 WL 3403144 (D.N.J. May 27, 2015), *aff'd*, 653 F. App'x 109 (3d Cir. 2016)........................................................................................................................... 14

*DiSantis v. Allied Constr., LLC*, 2018 WL 3647210 (D.N.J. July 31, 2018)................................. 8

*Dunn v. PHH Mortg. Corp.*, 2021 WL 870659 (D.N.J. Mar. 9, 2021)......................................... 19

*eBay Inc. v. MercExchange, LLC.*, 547 U.S. 388 (2006)............................................................. 26

*Feldman v. Mercedes-Benz USA, LLC*, 2012 WL 6596830 (D.N.J. Dec. 18, 2012)........ 15, 18, 19

*Forman v. Data Transfer*, 164 F.R.D. 400 (E.D.Pa. 1995) ........................................... 12

*Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451 (D.N.J. 2005), as amended (Sept. 22, 2005) ...................................................................................................................... 30

*Galicki v. New Jersey*, 2015 WL 3970297 (D.N.J. June 29, 2015) ............................... 29

*Goadby v. Philadelphia Elec. Co.*, 639 F.2d 117 (3d Cir. 1981).................................. 26

*Goodman v. Intervet, Inc.*, 2023 WL 2368123 (D.N.J. Mar. 6, 2023)...................... 15, 19, 21, 23

*Gray v. Bayer Corp.*, 2009 WL 1617930 (D.N.J. June 9, 2009) .................................. 22

*Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373 (D.N.J. 2014)................................ 13

*GSC Partners CDO Fund v. Washington*, 368 F.3d 228 (3d Cir. 2004) ........................ 7

*Hammer v. Vital Pharms., Inc.*, 2012 WL 1018842 (D.N.J. Mar. 26, 2012)............... 23

*Hemy v. Perdue Farms, Inc.*, 2011 WL 6002463 (D.N.J. Nov. 30, 2011) ................... 24

*In re Actiq Sales & Mktg. Pracs. Litig.*, 307 F.R.D. 150 (E.D. Pa. 2015) ................... 24

*In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.*, 2013 WL 5503308 (D.N.J. Oct. 2, 2013).............................................................................................. 21

*In re Ford Motor Co. E–350 Van Prods. Liab. Litig. (No. II)*, 2012 WL 379944 (D.N.J. Feb. 6, 2012) .............................................................................................................. 11

*In re Insulin Pricing Litig.*, 2021 WL 5980629 (D.N.J. Dec. 17, 2021)...................... 25

*In re LifeUSA Holding Inc.*, 242 F.3d 136 (3d Cir. 2001) .......................................... 13

*In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781 (3d Cir. 1999) ......... 25

*In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867 (E.D. Pa. 2012) ..... 24

*In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 2023 WL 1818922 (D.N.J. Feb. 8, 2023) ........................................................................................................ 24, 30

*In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143 (E.D. Pa. 2009).......................... 20

*Int'l Union of Operating Eng'rs Local #68 Welfare Fund v. Merck & Co., Inc.*, 384 N.J. Super. 275 (App. Div. 2006), *rev'd on other grounds*, 192 N.J. 372 (2007)........................ 19

*Julius Realty Corp. v. Thompson*, 2023 WL 2728786 (D.N.J. Mar. 31, 2023) ............ 22

*Kaplan v. Gen. Elec. Co.*, 2023 WL 4288157 (D.N.J. June 30, 2023) ......................................... 23

*Kasher L. Grp., LLC v. Ciox Health, LLC*, 2018 WL 4215004 (D.N.J. Sept. 5, 2018) ............... 27

*Kline v. Sec. Guards, Inc.*, 196 F.R.D. 261 (E.D. Pa. 2000) ......................................................... 12

*Kondratick v. Beneficial Consumer Disc. Co.*, 2006 WL 305399 (E.D. Pa. Feb. 8, 2006) ............ 8

*Maniscalco v. Broth'r Int'l (USA) Corp.*, 709 F.3d 202 (3d Cir. 2013) ........................... 15, 17, 19

*Maniscalco v. Brother Int'l Corp. (USA)*, 793 F. Supp. 2d 696 (D.N.J. 2011), *aff'd*, 709 F.3d 202 (3d Cir. 2013) .................................................................................................................................... 14

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) ....................................................... 7

*Mayline Enterprises, Inc. v. Milea Truck Sales Corp.*, 641 F. Supp. 2d 304 (S.D. N.Y. 2009) ... 27

*McGuire v. BMW of N. Am., LLC*, 2014 WL 2566132 (D.N.J. June 6, 2014) ............................ 21

*McLeod v. Fifth Jud. Dist. of Pennsylvania*, 2022 WL 13986832 (D.N.J. Oct. 24, 2022) ............. 7

*MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239 (3d Cir. 2005) ........................................ 7, 28

*Melzer v. Johnson & Johnson Consumer Inc.*, 2023 WL 3098633 (D.N.J. Apr. 26, 2023) ......... 24

*MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349 (D.N.J. May 17, 2021) ............................. 7

*Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363 (D.N.J. 2019) ........................................................... 14

*Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439 (D.N.J. 2012) ................................................. 17

*Moxey v. Jimmy Auto Sale LLC*, 2019 WL 1399556 (D.N.J. Mar. 28, 2019) ................................ 9

*Newman v. Corsner*, 2016 WL 11575142 (Va. Cir. Ct. Dec. 1, 2016) ........................................ 21

*Noble v. Samsung Elecs. Am., Inc.*, 2018 WL 801590 (D.N.J. Feb. 8, 2018) ........................ 13, 23

*Pierre v. Healthy Beverage, LLC*, 2022 WL 596097 (E.D. Pa. Feb. 28, 2022) .................... 21, 24

*Pollock v. Energy Corp. of Am.*, 2013 WL 5338009 (W.D. Pa. Sept. 16, 2013) ......................... 11

*Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194 (D.N.J. 2020) .............................. 7, 22

*Rabinowitz v. Am. Water Res., LLC*, 2019 WL 1324492 (D.N.J. Mar. 25, 2019) ....................... 14

*Richardson v. Bart's Car Store, Inc.*, 2014 WL 7184433 (S.D. Ind. Dec. 15, 2014) .................. 27

*Rodriguez v. PPG Industries, Inc.*, 2023 WL 2422189 (W.D. Pa. Mar. 9, 2023) ....................... 20

*S. Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370 (D.N.J.), *aff'd in part*, 258 F. App'x 466 (3d Cir. 2007) .................................................................................................... 8

*Sceviour v. McKeon*, 2018 WL 3352964 (D. Mass. July 9, 2018) ............................................. 20

*Schechter v. Hyundai Motor Am.*, 2019 WL 3416902 (D.N.J. July 29, 2019) ........................... 21

*Schechter v. Hyundai Motor Am.*, 2020 WL 1528038 (D.N.J. Mar. 31, 2020) (D.N.J. Mar. 31, 2020) ............................................................................................................................. 13, 14

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ....................................................................... 20

*Sheller v. City of Philadelphia*, 288 F.R.D. 377 (E.D. Pa. 2013) ............................................... 8

*Shrieves v. Phila. Facilities Mgmt. Corp.*, 2020 WL 7240450 (E.D. Pa. Dec. 8, 2020) ............. 29

*Skeino, LLC v. Reis*, 2022 WL 17357765 (C.D. Cal. Sept. 26, 2022) ........................................ 21

*TL of Fla., Inc. v. Terex Corp.*, 54 F. Supp. 3d 320 (D. Del. 2014) .......................................... 11

*U.S. ex rel. Krahling v. Merck & Co.*, 44 F. Supp. 3d 581 (E.D. Pa. 2014) .............................. 21

*VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539 (N.J. 1994) ...................................................... 23

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................ 7

*Wanna Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, 2009 WL 4730187 (D.N.J. Dec. 3, 2009) .............................................................................................................................................. 21

*White v. Williams*, 208 F.R.D. 123 (D.N.J. 2002) ...................................................................... 7

*Younger v. Harris*, 401 U.S. 37 (1971) ...................................................................................... 26

*Zamfirova v. AMAG Pharms., Inc.*, 2021 WL 2103287 (D.N.J. May 25, 2021) ......................... 23

**Statutes**

49 U.S.C. § 32703 ...................................................................................................................... 25

49 U.S.C. § 32704(a)(2) ............................................................................................................... 9

49 U.S.C. § 32705(a)(1) ............................................................................................................... 9

49 U.S.C. § 32710 ............................................................................................................. 9, 10, 27

N.J.S.A. § 56:8-19 ...................................................................................................................... 27

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................... 6

Fed. R. Civ. P. 8(a)(2) .......................................................................... 6, 20, 30

Fed. R. Civ. P. 9(b) ......................................................................................... 7

**Treatises**

Restatement (Second) of Conflict of Laws, § 148 ...................................... 16, 17, 18

**Regulations**

49 C.F.R. § 580.17(a) ...................................................................................... 9

Defendants FedEx Corporation ("FedEx"), Automotive Rentals, Inc. ("ARI"), Holman Automotive Group, Inc. ("HAGI"), and Holman Fleet Leasing, LLC ("HFL"), by and through their undersigned counsel, submit this brief in support of their Motion to Partially Dismiss Plaintiffs' Complaint [ECF 1] ("Complaint"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## **PRELIMINARY STATEMENT[1]**

This is an alleged odometer fraud putative class action lawsuit brought by five plaintiffs who are not New Jersey residents and have no connection to New Jersey other than through chain of title in vehicles that they allegedly purchased ("Plaintiffs"). Plaintiffs purport to bring claims on behalf of a nationwide class comprised of themselves "and other end consumers" under the federal Odometer Act, 49 U.S.C. §§ 32701 to 11, the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 to 20 ("NJCFA"), and for unjust enrichment and civil conspiracy. Even when construed in Plaintiffs' favor, most of Plaintiffs' allegations fail to state plausible claims for relief.

*First*, the alleged class is not viable, the failures so plain that it is the rare case where the Court can dismiss the class allegations now. The class definition is riddled with individualized issues of fact and impermissible legal conclusions rendering the case incapable of class-wide resolution.

*Second*, Plaintiffs' nationwide NJCFA claim is untenable as New Jersey does not have the "most significant relationship" to the consumer fraud claims of the purported class.

*Third*, Plaintiffs' nationwide unjust enrichment and civil conspiracy claims are implausible. Plaintiffs assert these claims on behalf of a nationwide class without specifying the

---

[1] FedEx Corporation recently informed Plaintiffs that its subsidiary, Federal Express Corporation, is the proper party to this case. The parties are discussing options to rectify that. Regardless, the arguments below apply to either "FedEx" entity. FedEx Corporation reserves all rights, defenses, and objections related to being wrongly named as a defendant, though for purposes of this motion only, as it must, accepts as true any well-pleaded allegations in the Complaint.

state law being applied. Even if New Jersey law is assumed, the unjust enrichment and civil conspiracy claims fail because they lack facts establishing essential elements, are redundant, and otherwise fatally flawed.

*Fourth and Fifth*, Plaintiffs seek various types of equitable relief and punitive damages with no basis in fact or law to support those demands.

*Sixth*, Plaintiffs impermissibly deploy a "group pleading" strategy against ARI,  HAGI, and HFL – referring to them collectively as "Holman." In doing so, Plaintiffs fail to satisfy basic federal pleading standards by providing enough information to put ARI, HAGI, or HFL on notice as to their purported conduct in furtherance of the alleged odometer fraud scheme.

*Lastly*, HFL should be dismissed because it was not formed until January 2021, years after the Plaintiffs purchased their vehicles.

For these reasons, as explained further below, FedEx, ARI, HAGI, and HFL respectfully move to dismiss with prejudice: (1) the putative class allegations; (2) all claims against ARI, HAGI, HFL; (3) the NJCFA, unjust enrichment, and civil conspiracy claims asserted against FedEx ; (4) all demands for equitable relief; and (5) Plaintiffs' demand for punitive damages.

## FACTUAL BACKGROUND

### I.   PLAINTIFFS

Plaintiffs are non-New Jersey residents that purchased used FedEx fleet delivery vehicles to operate as food trucks. ECF 1 (Complaint), ¶¶ 1-4, 52-55, 63-66, 74-77, 85-88. Plaintiffs allege their vehicles were first sold at auction to third parties who are also not residents of New Jersey, who then sold the vehicles to "Plaintiffs and other end consumers." *Id.* at ¶¶ 47-48, 53-54, 64-65, 75-76, 86-87. Plaintiffs allege the auction buyers were "usually . . . a local retailer." *Id.* at ¶ 37.

Plaintiffs do not allege their vehicle transactions occurred in New Jersey or that the vehicles they purchased were in New Jersey at the time of sale. Nor do Plaintiffs allege that they engaged

in any transactions directly with FedEx, ARI, HAGI, or HFL in connection with the purchase of their vehicles, or that Plaintiffs received or relied on alleged misrepresentations in New Jersey.

Plaintiffs Gabriel Barrera Almonte and Mayra Magadan Munoz, h/w ("Almonte-Munoz") are California residents. *Id.* at ¶ 1. Plaintiffs allege Almonte-Munoz entered into an agreement with another California resident in September 2017 to purchase a used FedEx diesel fleet vehicle. *Id.* at ¶ 54. Plaintiffs allege the vehicle was previously sold at a California auction prior to Almonte-Munoz purchasing it. *Id.* at ¶ 53. Plaintiffs also alleged that Almonte-Munoz took out a loan from a California lender to finance their purchase. *Id.* at ¶ 54. There is nothing in the Complaint to suggest that this vehicle was sold in New Jersey.

James Jackman ("Jackman") is a Florida resident. *Id.* at ¶ 2. Jackman claims he purchased a used diesel fleet vehicle from a Colorado resident in April 2017. *Id.* at ¶ 65. Plaintiffs allege the vehicle was previously sold at an unidentified auction prior to Jackman's purchase. *Id.* at ¶ 64. There is nothing in the Complaint to suggest that this vehicle was sold in New Jersey.

Miki Nolin ("Nolin") is a Tennessee resident. *Id.* at ¶ 3. Plaintiffs allege that Nolin entered into an agreement with a Virginia resident in September 2018 to purchase a used diesel fleet vehicle. *Id.* at ¶ 76. Plaintiffs allege the vehicle was previously sold at an unidentified auction prior to Nolin purchasing it. *Id.* at ¶ 75. There is nothing in the Complaint to suggest that this vehicle was sold in New Jersey.

Richard Alliet ("Alliet") is a Virginia resident. *Id.* at ¶ 4. Plaintiffs allege Alliet entered into an agreement with a District of Columbia resident in October 2017 to purchase a used FedEx diesel fleet vehicle. *Id.* at ¶ 87. Plaintiffs allege the vehicle was previously sold at an unidentified auction prior to Alliet purchasing it. *Id.* at ¶ 86. There is nothing in the Complaint to suggest that this vehicle was sold in New Jersey.

## II.   DEFENDANTS

FedEx is a Delaware corporation headquartered in Tennessee. *Id.* at ¶ 5; *see* Declaration of Counsel ("Declaration"), Ex. 1 (Form S-3), at 1. FedEx is the parent holding company for a portfolio of subsidiary entities, such as Federal Express Corporation – "the world's largest express transportation company" ("Express"). *Id.* at 2. Express is also a Delaware corporation and also headquartered in Tennessee. *See* Declaration, Ex. 1 (Form S-3), at 1.

ARI is a New Jersey corporation headquartered in New Jersey. ECF 1 (Compl.), ¶ 6. HAGI is a Delaware corporation headquartered in New Jersey. *Id.* at ¶ 8. HFL is a Delaware limited liability company headquartered in New Jersey. *Id.* at ¶ 7. HFL was formed on January 21, 2021. *See* Declaration of Counsel, Ex. 2 (HFL Certificate of Formation).

## III.   PLAINTIFFS' CLAIMS AND DEMAND FOR RELIEF

As noted above, Plaintiffs filed this putative class action, purportedly on behalf of a nationwide class, alleging that Defendants engaged in a scheme to commit odometer fraud against "Plaintiffs and other end consumers." ECF 1 (Compl.), ¶¶ 47-48, 112-16. Plaintiffs assert claims for violation of the Odometer Act (Count I); the NJCFA (Count II); Civil Conspiracy (Count III); and Unjust Enrichment (Count IV). *Id.* at ¶¶ 111-39. Plaintiffs seek trebled damages, attorneys' fees and costs, injunctive and declaratory relief, restitution, disgorgement, punitive damages, and "augmented damages." *Id.* at ¶¶ 117, 128, 133, 139, Prayer for Relief.

## IV.   THE ALLEGED ODOMETER FRAUD SCHEME.

Plaintiffs allege that "FedEx engaged Holman to manage FedEx's fleet of motor vehicles." *Id.* at ¶ 34. Plaintiffs allege that "Holman originally helped FedEx to identify and scrap FedEx diesel fleet vehicles that had reached the end of their useful lives (typically around 350,000 miles)." *Id.* at ¶ 35. The used "diesel fleet delivery vehicles" that Plaintiffs purchased are "primarily Freightliner models MT45 and MT55." *Id.* at ¶ 36.

4

"[B]eginning in or around 2011," Plaintiffs allege that "Defendants determined that they could create an additional revenue stream by remarketing, rather than destroying FedEx's fleet vehicles." *Id.* at ¶ 35. Plaintiffs allege "Defendants, particularly FedEx and Holman" engaged in a fraud scheme through that "remarketing program" to "replace odometers on thousands of used diesel fleet delivery vehicles," set the new odometers to display zero miles, and "later sell the vehicles at a premium, without disclosing that the mileage listed on the odometers is inaccurate." *Id.* at ¶¶ 36-37, 41-51. Plaintiffs allege:

> 38. All of the transactions involving each of the Plaintiffs followed a similar pattern. Holman is FedEx's exclusive fleet manager and a licensed dealer (ARI holds New Jersey Motor Vehicle License #02750U). Holman would take title to the FedEx/Holman Vehicles from FedEx and bring them to market. In the vast majority of cases, Holman would sell the FedEx/Holman Vehicles through one of about a half dozen large, regional automotive auctions throughout the nation (known in the industry by such names as Manheim, ADESA, South Bay Auto Auction, Americas Auto Auctions, Bob McConkey's Auction Group, and David Andrews Dealers Auto Auction Group of Tennessee). Holman would sign and transfer the title for the FedEx/Holman Vehicle to the purchaser and complete the odometer disclosure section of the title.

> 39. At all times herein, neither FedEx nor Holman acknowledged in the odometer disclosure that the odometer display of the FedEx/Holman Vehicle was "Not Actual Miles (Not Actual)," or that the odometers were replaced and the mileage was "True Mileage Unknown (TMU)." Defendants did not make those required acknowledgements because it would have severely affected the values of the FedEx/Holman Vehicles and would have been reflected in the history of the vehicles (i.e., it would appear on the CarFax reports).

*Id.* at ¶¶ 38-39.

## V.   **PLAINTIFFS' CLASS ALLEGATIONS**

Plaintiffs propose a nationwide odometer fraud class based on the following criteria:

> a) purchased one or more FedEx/Holman Vehicles; and

      b) the FedEx/Holman Vehicle/s was/were being managed by Holman under its agreements with FedEx; and

      c) the odometer of the FedEx/Holman Vehicle/s was/were replaced or altered; and

      d) the odometer of the FedEx/Holman Vehicle/s did not reflect the actual miles traveled by the vehicle/s; and

      e) there was no legally required notice under the Odometer Act and/or the [NJCFA].

ECF 1 (Compl.), ¶ 97(a)-(e). Excluded from the putative class are, among others:

      b) all putative Class members who executed a release of the claims contained in this Complaint; and

      c) any putative Class members whose claims fall outside of the number of years provided for in the limitations period contained within the Odometer Act, subject to applicable discovery and accrual considerations.

*Id.* at ¶ 98(b)-(c). Plaintiffs further allege "[t]he identity of all of the members of the putative Class is within the knowledge of Defendants and can be readily ascertained by resort to Defendant's detailed records" and "through resort to public sale, registration and title records, as well as the records required to be kept by auction houses under 49 C.F.R. 580.9 . . . ." *Id.* at ¶¶ 100-01.

### **STANDARD OF REVIEW**

      Plaintiffs must plead sufficient facts that state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 8(a)(2). Plausibility "is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009). Legal conclusions and conclusory statements are insufficient and should be disregarded. *Id.* at 686; *Twombly*, 550 U.S. at 555. Further, courts in this District generally agree that "group pleading" fails to meet federal pleading standards. *McLeod v. Fifth Jud. Dist. of Pennsylvania*, 2022 WL 13986832, at *2 (D.N.J. Oct. 24,

2022) ("Pleadings that fail to identify each defendant's role for the alleged wrong are insufficient."); *MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 365 (D.N.J. May 17, 2021).

Some of Plaintiffs' claims sound in fraud and are subject to a heightened pleading standard. Fed. R. Civ. P. 9(b). To adequately plead fraud, Plaintiffs must allege facts about the scheme and each participant's alleged involvement with particularity:

> [I]t is not enough for [the] plaintiffs to merely allege that defendants "knew" their statements were fraudulent or that defendants "must have known" their statements were false. . . . [The plaintiffs] must support their allegations with the essential factual background that would accompany "the first paragraph of any newspaper story" – that is, the "who, what, when, where and how" of the events at issue.

*GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004) (citations omitted)); *see MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005). Like Rule 8(a)(2), "Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 226 (D.N.J. 2020).

## ARGUMENT

### I. THE CLASS ACTION CLAIMS ARE NOT VIABLE.

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation and internal quotation marks omitted). As a result, a class action must meet the rigorous requirements of Rule 23. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012).

A prerequisite to the Rule 23 analysis is the existence of a "class." *White v. Williams*, 208 F.R.D. 123, 129 (D.N.J. 2002) ("Class certification presupposes the existence of an actual 'class.'"). A proposed class must be defined through objective terms without inquiring into the merits. *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 479 (D.N.J. 2009) ("A court must reject a proposed class or subclass definition that inextricably intertwines identification of class

members with liability determinations." (citation and internal quotation marks omitted));
*Kondratick v. Beneficial Consumer Disc. Co.*, 2006 WL 305399, at *7 (E.D. Pa. Feb. 8, 2006)
("To determine if an individual is a class member, a court must be able to do so by reference to
the class definition and without inquiry into any sort of fact-finding on the merits of the case.");
*see Sheller v. City of Philadelphia*, 288 F.R.D. 377, 383 (E.D. Pa. 2013) ("Including [due process]
requirements in the class definition unnecessarily burdens the definition with legal conclusions.").
Stated differently, "[a] plaintiff does not satisfy the ascertainability requirement if individualized
fact-finding or mini-trials will be required to prove class membership." *Carrera v. Bayer Corp.*,
727 F.3d 300, 307 (3d Cir. 2013). Additionally, the plaintiff in a class action must also demonstrate
ascertaining the proposed class is administratively feasible. *Id.* at 307. "Administrative feasibility
means that identifying class members is a manageable process that does not require much, if any,
individual factual inquiry."). *Id.* at 307-08.

Although rare, courts in this District may dismiss class allegations at the pleading stage
"where the complaint itself demonstrates that the requirements for maintaining a class action
cannot be met." *Accord S. Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370, 401
(D.N.J.), *aff'd in part*, 258 F. App'x 466 (3d Cir. 2007); *Clark v. McDonald's Corp.*, 213 F.R.D.
198, 205, n. 3 (D.N.J. 2003); *see, e.g.*, *DiSantis v. Allied Constr., LLC*, 2018 WL 3647210, at *5
(D.N.J. July 31, 2018) (dismissing part of the plaintiff's class allegations).

Here, deficiencies in the proposed class definition and need for individualized fact finding
are apparent on the face of the Complaint, make it the rare case warranting early dismissal.

### A.  Plaintiffs Propose a Class that Improperly Requires Liability Determinations.

Plaintiffs' proposed class turns on whether "there was no legally required notice under the
Odometer Act and/or the [NJCFA]." ECF 1 (Compl.), ¶ 97(e). Plaintiffs do not allege that different
notice is required under the NJCFA than under the Odometer Act.

8

The Odometer Act requires two types of notice. Section 32704(a)(2) states that written notice must be affixed to the vehicle if an odometer is repaired or replaced and the mileage cannot remain the same. 49 U.S.C. § 32704(a)(2). Section 32705(a)(1) states written disclosure from the transferor must be provided upon each sale of a vehicle stating the cumulative mileage registered on the odometer. 49 U.S.C. § 32705(a)(1). The § 32705(a)(1) notice is subject to vehicle weight and vehicle age exemptions. *See* 49 C.F.R. § 580.17(a) ("A transferor . . . need not disclose the vehicle's odometer mileage" for a vehicle over 16,000 pounds and/or a vehicle model greater than ten years old at the time of transfer).[2]

To prove class membership based on whether "there was no legally required notice," the Court must determine, for ***each potential class member***, that notice under §§ 32704(a)(2) or 32705(a)(1) was legally required. The Court must also make individualized findings that "legally required" notice was not provided and, if the notice was required by § 32705(a)(1), whether it "need not" be provided because of an exemption. 49 C.F.R. § 580.17(a). Together, the above legal and factual determinations result in a conclusion that FedEx or "Holman" violated the Odometer Act. A violation occurring is an essential element of Plaintiffs' claim under the Odometer Act, which "permits private persons to assert a civil action ***for any violation of the Act's provisions*** and regulations made 'with intent to defraud.'" *Moxey v. Jimmy Auto Sale LLC*, 2019 WL 1399556, at *3 (D.N.J. Mar. 28, 2019) (emphasis supplied) (quoting 49 U.S.C. § 32710(a)).

Thus, by making membership in the class contingent on "legally required notice," Plaintiffs impermissibly link class membership to a decision on the merits for their Odometer Act claim. This defect renders Plaintiffs' class definition impermissible. *See Agostino*, 256 F.R.D. at 479.

---

[2] Effective December 31, 2019, vehicle model years from 2011 onward do not become exempt until they are greater than twenty years old at the time of transfer. 49 C.F.R. § 580.17(a)(4)(i).

Moreover, to make the above legal conclusion and factual determinations, the Court would need to undertake individualized inquiries into the service *and* sale history of each potential class member's vehicle, as well as the model and age of each vehicle at the time of sale to determine if a weight or age exemption applied. Nor is this a case where Plaintiffs will be able to identify potential class members solely through FedEx, ARI, HAGI, or HFL documents. Plaintiffs allege that they are "end consumers" who purchased their vehicles from third parties who themselves purchased the vehicles at auction. ECF 1 (Compl.), at ¶¶ 47-48, 53-54, 64-65, 75-76, 86-87. Plaintiffs do not allege that they transacted directly with FedEx or "Holman" so their records will not tell the full story.

Plaintiffs also exclude "any putative Class members whose claims fall outside of the number of years provided for in the limitations period contained within the Odometer Act, subject to applicable discovery and accrual considerations." *Id.* at ¶ 98(c). This limitation's exclusion is inherently fact-specific, creating many unavoidable questions of fact among individual class members about when their claims accrued. *See Carrera*, 727 F.3d at 307 ("A defendant in a class action has a due process right to raise individual challenges and defenses to claims").

Defendants' statute of limitations defense is plain to see from the face of the Complaint. An action under the Odometer Act "must be brought not later than 2 years after the claim accrues." 49 U.S.C. § 32710(b). Plaintiffs filed this action in June 2023, despite purchasing their vehicles more than four years ago. ECF 1 (Compl.), ¶¶ 54, 65, 76, 87 (alleging purchases between April 2017 and September 2018). Plaintiffs therefore have to rely on the discovery rule to pursue their Odometer Act claims that are outside the typical limitations period. *See id.* at ¶¶ 51, 59, 70, 81, 92 ("Plaintiffs did not discover and could not, with reasonable vigilance and diligence, discover the odometer fraud perpetrated by Defendants at the time of sale."). The accrual of Plaintiffs'

10

Odometer Act claim under the discovery rule is a discrete factual inquiry specific to each potential class member.[3] *See Pollock v. Energy Corp. of Am.*, 2013 WL 5338009, at *23 (W.D. Pa. Sept. 16, 2013) ("[A]pplying the discovery rule would require the Court to make an individualized inquiry into whether each Plaintiff exercised reasonable diligence to know that they were injured"), report and recommendation adopted, 2013 WL 5491736 (W.D. Pa. Sept. 30, 2013); *In re Ford Motor Co. E–350 Van Prods. Liab. Litig. (No. II)*, 2012 WL 379944, at *36 (D.N.J. Feb. 6, 2012) ("Ford's statute-of-limitations defenses and any applicable discovery rule and/or other equitable tolling doctrine would require inquiries into the individual circumstances of each Plaintiff . . . and thus the presiding court would have to conduct countless individualized inquiries"); *see also TL of Fla., Inc. v. Terex Corp.*, 54 F. Supp. 3d 320, 329 (D. Del. 2014) ("Frequently, determining whether the statute of limitations has been tolled pursuant to the 'discovery rule' or due to fraudulent concealment requires a factual inquiry. . . ."). The individualized application of the discovery rule in this case is particularly heightened based on Plaintiffs' allegations in the Complaint. Plaintiffs each allege that it "was not long" after their purchase when their vehicles "started having the type of performance and maintenance issues to be expected in . . . a vehicle that had been driven for substantially more . . . miles." ECF 1 (Compl.), ¶¶ 57, 68, 79, 90. These allegations certainly beg the question of what each of the Plaintiffs knew (or should have known through the exercise of reasonable diligence) and when. This is precisely the type of individualized inquiry that is impermissible in a class action context.

In sum, "Plaintiffs have not met the minimum requirement of 'defin[ing] the class in a way that enables the court to determine whether a particular individual is a class member.'" *Kline v.*

---

[3] This Court has not addressed the meaning of "2 years after the claim accrues." District courts in other Circuits have, providing different interpretations. *See Alexander v. Se. Wholesale Corp.*, 978 F. Supp. 2d 615, 618-20 (E.D. Va. 2013) (citing cases).

*Sec. Guards, Inc.*, 196 F.R.D. 261, 266 (E.D. Pa. 2000) (*quoting Forman v. Data Transfer*, 164 F.R.D. 400, 403 (E.D.Pa. 1995)). Plaintiffs' class definition is impermissibly dependent on liability determinations and will require individualized mini trials to identify potential members. Accordingly, Plaintiffs' putative class allegations must be dismissed.

    **B. Plaintiffs' Proposed Class is not Administratively Feasible.**

    Plaintiffs allege "[t]he identity of all of the members of the putative Class is within the knowledge of Defendants and can be readily ascertained by resort to Defendant's detailed records." ECF 1 (Compl.), ¶ 100. Plaintiffs also allege "[t]he members of the putative Class are ascertainable through resort to public sale, registration and title records, as well as the records required to be kept by auction houses under 49 C.F.R. 580.9 . . . ." *Id.* at ¶ 101. Neither mechanism is administratively feasible from the face of the Complaint.

    Plaintiffs' own allegations flatly contradict the allegation that members can be ascertained through Defendants. As explained above, Plaintiffs do not allege that they transacted directly with FedEx or "Holman." Instead, Plaintiffs allege that they are "end consumers" who purchased their vehicles from third parties, and that it is the third parties (not Plaintiffs) who purchased the vehicles from "Holman" at auction. ECF 1 (Compl.), at ¶¶ 47-48, 53-54, 64-65, 75-76, 86-87. Plaintiffs' allegation that the proposed class can be identified through Defendants is nothing more than a mere conclusory allegation that should be disregarded for purposes of this Motion. *Ashcroft*, 556 U.S. at 663-64. *Twombly*, 550 U.S. at 555.

    The remaining alleged mechanism for ascertaining the proposed class – "through resort to public sale, registration and title records, as well as the records required to be kept by auction houses under 49 C.F.R. 580.9 . . . ." – is also not administratively feasible. Distilled down, Plaintiffs purport to identify potential class members through a patchwork series of records from individual sales and third-party records from across the country. ECF 1 (Compl.), ¶ 38 ("In the

vast majority of cases, Holman would sell the FedEx/Holman Vehicles through one of about a half dozen large, regional automotive auctions throughout the nation."). Crucially absent from the Complaint, however, are facts alleging *how* the assembly of these materials can piece together information sufficient enough to identify potential class members.

Accordingly, Plaintiffs' class definition must be dismissed.

## II.   THE NJCFA CLAIM (COUNT II) SHOULD BE DISMISSED UNDER CHOICE OF LAW PRINCIPLES.

### A.  The Third Circuit Routinely Analyzes Choice-of-Law in Motions to Dismiss.

Plaintiffs are residents of states other than New Jersey purporting to bring claims on behalf of a nationwide class. *Id.* at ¶¶ 1-4, 102. In a multistate class action lawsuit, a choice of law analysis must be conducted to determine which state's law should apply to the class. *Argabright v. Rheem Manufacturing Company*, 201 F. Supp. 3d 578, 591, n. 5 (D.N.J. 2016) (*citing In re LifeUSA Holding Inc.*, 242 F.3d 136, 147 n. 11 (3d Cir. 2001)). "Indeed, the Third Circuit, and federal courts in this district, often adjudicate choice of law questions at the motion to dismiss stage within the context of class action consumer fraud disputes." *Schechter v. Hyundai Motor Am.*, 2020 WL 1528038, at *6 (D.N.J. Mar. 31, 2020) (D.N.J. Mar. 31, 2020) (citing cases); *Noble v. Samsung Elecs. Am., Inc.*, 2018 WL 801590, at *7 (D.N.J. Feb. 8, 2018) (citing cases); *Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 380 (D.N.J. 2014) (citing cases); *see e.g., Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x. 250, 255, n. 5 (3d Cir. 2010) (rejecting the argument that lower court erred in resolving choice of law determination as to statutory consumer fraud claim at motion to dismiss stage).

### B.  New Jersey does not have the "Most Significant Relationship" with Plaintiffs' Nationwide Consumer Fraud Claim.

Federal courts in multidistrict class actions determine controlling state law by applying the choice of law rules of the forum state. *See, e.g.*, *DeFillippo v. Whirlpool Corp.*, 2019 WL 4127162,

at *4, n. 5 (D.N.J. Aug. 30, 2019); *Rabinowitz v. Am. Water Res., LLC*, 2019 WL 1324492, at *5, n. 7 (D.N.J. Mar. 25, 2019). Here, that is New Jersey.

"New Jersey uses the most-significant-relationship test, which consists of two prongs." *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 373 (D.N.J. 2019). First, the Court must determine if there is a conflict between the laws at issue. *Maniscalco v. Brother Int'l Corp. (USA)*, 793 F. Supp. 2d 696, 704 (D.N.J. 2011), *aff'd*, 709 F.3d 202 (3d Cir. 2013). Second, if a conflict exists, the Court must determine the state with the "most significant relationship" to the claims. *Id.*

Step One is satisfied here. Plaintiffs are residents of different states – California, Florida, Tennessee, and Virginia. ECF 1 (Compl.), ¶¶ 1-4. New Jersey courts consistently recognize that state consumer protection laws differ and materially conflict with one another. *Dicuio v. Brother Int'l Corp.*, 2015 WL 3403144, at *15 (D.N.J. May 27, 2015) ("Courts have recognized that significant conflicts exist between the NJCFA and the consumer protection statutes of other states.") (brackets, citation and internal quotation marks omitted)), *aff'd*, 653 F. App'x 109 (3d Cir. 2016); *Agostino*, 256 F.R.D. at 461 (same); *see Debra F. Fink, D.M.D., M.S., PC v. Ricoh Corp.*, 839 A.2d 942, 974-82 (N.J. Law. Div. 2003) (discussing material differences between the NJCFA and various state consumer fraud laws, including California and Tennessee).[4]

For Step Two, since fraud is alleged, the Court looks to § 148 of the Restatement (Second) of Conflict of Laws to determine the state with the "most significant relationship":

> Under subsection (1) of § 148, when the "plaintiff's action in reliance took place in the state where the false representations were made and received," there is a presumption that the law of that state applies. Under subsection (2), when the plaintiff's action in reliance

---

[4] *See Schechter*, 2020 WL 1528038, at *4 (finding material conflicts between the NJCFA and California's consumer protection statutes); *Dicuio*, 2015 WL 3403144, at *29-30 (finding material conflicts between the NJCFA and Florida's consumer protection statute); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 294 (D.N.J. 2009) (finding material conflicts between the NJCFA and Virginia's consumer protection law).

14

takes place in a different state than where the false representations were made and received, courts weigh the following factors:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicil[e], residence, nationality, place of incorporation and place of business of the parties

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Maniscalco v. Broth'r Int'l (USA) Corp.*, 709 F.3d 202, 207 (3d Cir. 2013).[5]

For purposes of the Motion, it is assumed that § 148(2) applies. Plaintiffs do not allege where the alleged misrepresentations were made. ECF 1 (Compl.), ¶¶ 122, 124 (alleging generally that misrepresentations were made). Nonetheless, the Third Circuit and courts in this District generally apply § 148(2) finding that alleged representations are "made" at a defendant's headquarters, not in the consumers' home states. *Feldman v. Mercedes-Benz USA, LLC*, 2012 WL 6596830, at *6 (D.N.J. Dec. 18, 2012).

Plaintiffs' purchases can be summarized as follows:

**Almonte-Munoz.** A *California* resident who entered into an agreement with another *California* resident to purchase a vehicle that had been previously sold by "Holman" at a

---

[5] *See Goodman v. Intervet, Inc.*, 2023 WL 2368123, at *7 (D.N.J. Mar. 6, 2023) ("[T]he Court must also consider the principles set forth in § 6 of the Restatement, which include (1) the interests of interstate comity, (2) the interests of the parties, (3) the interests underlying the field of tort law, (4) the interests of judicial administration, and (5) the competing interests of the states." (citation and internal quotation marks omitted)).

*California* auction. ECF 1 (Compl.), ¶¶ 1, 53-54. Almonte-Munoz funded their purchase through a business loan from a *California* resident. *Id.* at ¶ 54.

**Jackman.** A *Florida* resident who entered into an agreement with a *Colorado* resident to purchase a vehicle that had been previously sold by "Holman" at auction. *Id.* at ¶¶ 2, 64-65. The auction is not alleged to have taken place in New Jersey and likely occurred in *Colorado* since auction sales were "usually to . . . a local retailer." *Id.* at ¶ 37.

**Nolan.** A *Tennessee* resident who entered into an agreement with a *Virginia* resident to purchase a vehicle that had been previously sold by "Holman" at auction. *Id.* at ¶¶ 3, 75-76. The auction is not alleged to have taken place in New Jersey and likely occurred in *Virginia* since auction sales were "usually to . . . a local retailer." *Id.* at ¶ 37.

**Alliet.** A *Virginia* resident who entered into an agreement with a *District of Columbia* resident to purchase a vehicle that had been previously sold by "Holman" at auction. *Id.* at ¶¶ 4, 86-87. The auction is not alleged to have taken place in New Jersey and likely occurred in the *District of Columbia* since auction sales were "usually to . . . a local retailer." *Id.* at ¶ 37.

Applying the § 148(2) factors to the information above, New Jersey does not have the "most significant" contacts with Plaintiffs' claims. None of the factors weigh in favor of applying New Jersey law. All but one factor weighs strongly in favor of applying other state laws, such as Plaintiffs' home states.

Factors (a) and (b), focusing on where the plaintiff acted in reliance upon, and received, the defendant's alleged representations, weigh strongly in favor of applying other state laws. Plaintiffs do not allege they acted in reliance on or received alleged misrepresentations in New Jersey. *See* Restatement (Second) of Conflict of Laws, § 148(2)(a)-(b). As explained above, Plaintiffs are all residents of other states (California, Florida, Tennessee, and Virginia) who

purchased the vehicles from out of state sellers (California, Virginia, Tennessee, and the District of Columbia) at auctions – none of which are alleged to have taken place in New Jersey. ECF 1 (Compl.), ¶¶ 1-4,53-54, 64-65, 75-76, 86-87; *see id.* at ¶ 37 (alleging that the auction buyers were "usually . . . a local retailer"); *see also Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 447 (D.N.J. 2012) ("Because Plaintiff lives in California and bought the washing machine from a store in California, her reliance on any misrepresentations, if any, necessarily would have been in California.").

Factor (d), focusing on the domicile, residence, place of incorporation, and place of business of the parties, strongly weighs in favor of applying other state laws. Restatement (Second) of Conflict of Laws, § 148(2)(d). Most of the named parties (six of nine) are residents of, or incorporated in (for the entities), other states. The five Plaintiffs are residents of California (Almonte and Munoz), Florida, Tennessee, and Virginia. ECF 1 (Compl.), ¶¶ 1-4. FedEx is a Delaware corporation headquartered in Tennessee. *Id.* at ¶ 5. Further, HAGI and HFL are neutral under this factor since both are incorporated in Delaware but headquartered in New Jersey. *Id.* at ¶¶ 7-8. Further, Plaintiffs seek pecuniary loss (monetary damages) in this case. *Id.* at ¶¶ 60, 71, 82, 93. The Third Circuit has previously explained that the pursuit of pecuniary loss means "'[t]he domicil[e], residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant because 'financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship.'" *Maniscalco*, 709 F.3d at 208 (quoting Restatement (Second) of Conflict of Laws, § 148, cmt. i); *see, e.g.*, *Cohen v. Subaru of Am., Inc*., 2022 WL 714795, at *16 (D.N.J. Mar. 10, 2022) (weighing factor (d) against the plaintiffs because their "fraud claims allege pecuniary loss").

17

Factor (e), focusing on the vehicle location at the time of sale, weighs strongly in favor of applying other state laws. Plaintiffs do not allege the vehicles were in New Jersey at the time of purchase. *See* Restatement (Second) of Conflict of Laws, § 148(2)(e). Again, Plaintiffs' purchases all involved residents of states other than New Jersey. ECF 1 (Compl.), ¶¶ 54, 65, 76, 87.

Factor (f), focusing on where the plaintiff is to render performance under a contract which he or she has been induced to enter by the false representations of the defendant, also weighs strongly in favor of applying other state laws. Restatement (Second) of Conflict of Laws, § 148(2)(f). Plaintiffs allege that they entered into agreements with third parties to purchase their vehicles. *See* ECF 1 (Compl.), ¶¶ 54, 65, 76, 87. Again, these purchases all involved residents of states other than New Jersey. Plaintiffs further allege that they would not have entered into agreements to purchase their vehicles had they "had any idea of the true mileage on the [vehicle] at the time of purchase, or that Defendants were intentionally misrepresenting that mileage." *Id.* at ¶¶ 61, 72, 83, 94. Plaintiffs do not allege New Jersey is where they performed under their agreements to purchase the vehicles. *Id.* at § 148(2)(f). In fact, Plaintiffs do not allege any connection between New Jersey and their respective purchase agreements.

The remaining factor (c), focusing on the place where the defendant made the representations, is neutral. Restatement (Second) of Conflict of Laws, § 148(2)(c). As explained above, the Third Circuit and courts in this District find that alleged representations are "made" at a defendant's headquarters. *Feldman*, 2012 WL 6596830, at *6. Here, that is Tennessee and New Jersey since Plaintiffs allege that "FedEx and Holman" made alleged misrepresentations. *See* ECF 1 (Compl.), ¶¶ 5-8, 122, 124.

In sum, it is clear that states other than New Jersey have the "most significant relationship" to Plaintiffs' consumer fraud claim. Courts in this District repeatedly dismiss NJCFA claims in

multistate class actions in closer circumstances. *See Maniscalco*, 709 F.3d at 209 (upholding the dismissal of an NJCFA claim on choice of law grounds where only "three of six contacts weigh[ed] strongly in favor of" applying another state's law); *see Goodman*, 2023 WL 2368123, at *7-8 (dismissing an NJCFA claim on choice of law grounds where four of six contacts weighed in favor of applying another state's law); *Dunn v. PHH Mortg. Corp.*, 2021 WL 870659, at *7 (D.N.J. Mar. 9, 2021) (dismissing an NJCFA claim on choice of law grounds where three of six contacts weighed in favor of applying another state's law); *Block v. Jaguar Land Rover N. Am., LLC*, 2016 WL 3032682, at *2-3 (D.N.J. May 26, 2016); *Feldman*, 2012 WL 6596830, at *5-7 (same).

Accordingly, the NJCFA claim should be dismissed.

### C. The NJCFA Claim Against FedEx Should be Dismissed Because FedEx is not Headquartered or Based in New Jersey.

Plaintiffs cannot state a claim against FedEx under the NJCFA because FedEx is not a business headquartered or based in New Jersey. New Jersey's Appellate Division has held that consumers can sue under the NJCFA for transactions occurring in other states, so long as the defendant is a business headquartered or based in New Jersey. *Int'l Union of Operating Eng'rs Local #68 Welfare Fund v. Merck & Co., Inc.*, 384 N.J. Super. 275, 305 (App. Div. 2006), *rev'd on other grounds*, 192 N.J. 372 (2007). In emphasizing this threshold requirement, the Court noted "the New Jersey Legislature intended its Consumer Fraud statute to apply ***to sales made by New Jersey sellers*** even if the buyer is an out-of-state resident and some aspect of the transaction took place outside New Jersey." *Boyes v. Greenwich Boat Works*, 27 F.Supp.2d 543, 547 (D.N.J. 1998) (emphasis supplied); *see id.* ("While there can be no doubt that the New Jersey legislature desired to protect its own residents, it is equally clear that this state has a powerful incentive to [e]nsure that ***local merchants*** deal fairly with citizens of other states and countries." (emphasis supplied)).

Here, the Complaint does not (and indeed, cannot) allege that FedEx is headquartered or based in New Jersey, that FedEx even sold the subject vehicles to Plaintiffs, or that Plaintiffs purchased the vehicles in New Jersey. FedEx is a Delaware corporation headquartered in Tennessee.[6] *Id.* at ¶ 5; Declaration, Ex. 1 (Form S-3), at 1; *see Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (recognizing that courts can take judicial notice of SEC filings). So, although the NJCFA may be liberally construed to cover out-of-state buyers if some aspect of the transaction occurred in New Jersey, the NJCFA does not apply to such transactions if the defendant is not headquartered or based in New Jersey. As FedEx is not headquartered or based in New Jersey, the NJCFA claim must be dismissed against FedEx.

## III.   PLAINTIFFS' COMMON LAW CLAIMS (COUNTS III & IV) FAIL AS A MATTER OF LAW.

### A.   Plaintiffs do not Specify the State Law Applied to Their Unjust Enrichment and Civil Conspiracy Claims.

Plaintiffs assert unjust enrichment and civil conspiracy claims on behalf of a nationwide class but do not specify the state law under which those claims are being brought. ECF 1 (Compl.), ¶¶ 129-39. By not specifying the applicable state law,[7] Plaintiffs fail to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Courts in the Third Circuit including this District routinely dismiss common law claims on this basis for failure to satisfy basic pleading standards. *See Rodriguez v. PPG Industries, Inc.*, 2023 WL 2422189, at *2 (W.D. Pa. Mar. 9, 2023) (dismissing an unjust enrichment claim brought "in violation of unidentified state laws" as "simply insufficient under Rule 8 and fail to state plausible claims under Rule 12(b)(6)"); *Pierre v. Healthy Beverage, LLC*, 2022 WL 596097, at *14 (E.D.

---

[6] Express is a Delaware entity headquartered in Tennessee. Declaration, Ex. 1 (Form S-3), at 1.

[7] There is no federal common law cause of action for civil conspiracy or unjust enrichment. *Sceviour v. McKeon*, 2018 WL 3352964, at *2, n. 2 (D. Mass. July 9, 2018) (civil conspiracy); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009) (unjust enrichment).

Pa. Feb. 28, 2022) (same); *U.S. ex rel. Krahling v. Merck & Co.*, 44 F. Supp. 3d 581, 609 (E.D. Pa. 2014) (dismissing nationwide unjust enrichment claim because "the Complaint fails to invoke the law of any particular jurisdiction" and citing cases); *In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.*, 2013 WL 5503308, at *8 (D.N.J. Oct. 2, 2013) (same).

Even if Plaintiffs were pursuing unjust enrichment and civil conspiracy under New Jersey law (which is not clear from the face of the Complaint), these claims fail for additional reasons.

**B.  New Jersey does Not Recognize a Tort-Based Claim for Unjust Enrichment.**

Plaintiffs plead an unjust enrichment claim sounding in tort, alleging that "[a]s ***a direct and proximate result*** of Defendants' misrepresentations and knowing omissions, Defendants reaped ill-gotten gains, benefits, and profits, and have been unjustly enriched at the expense of Plaintiffs." ECF 1 (Compl.), ¶ 132 (emphasis supplied)). "[T]he term 'proximate cause' derives from general tort law." *Cnty. of Maui, Hawaii v. Hawaii Wildlife Fund*, 140 S. Ct. 1462, 1470-71 (2020). "New Jersey does not recognize unjust enrichment as an independent tort cause of action."[8] *McGuire v. BMW of N. Am., LLC*, 2014 WL 2566132, at *3 (D.N.J. June 6, 2014); *see Goodman*, 2023 WL 2368123, at *8 (citing cases); *Schechter v. Hyundai Motor Am.*, 2019 WL 3416902, at *10 (D.N.J. July 29, 2019) (same); *see, e.g.*, *Wanna Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009) (dismissing an unjust enrichment claim as sounding in tort based on alleged misrepresentations); *Gray v. Bayer Corp.*, 2009 WL 1617930, at *3 (D.N.J.

---

[8] Virginia, where the Alliet Plaintiff resides, also does not recognize an unjust enrichment claim sounding in tort. *See Newman v. Corsner,* 2016 WL 11575142, at *2 (Va. Cir. Ct. Dec. 1, 2016) ("[U]njust enrichment is an equitable principle based upon quasi-contract, not tort."). Further, California – where the Almonte-Munoz Plaintiffs reside – does not even recognize unjust enrichment as a cause of action at all. *Skeino, LLC v. Reis*, 2022 WL 17357765, at *6 (C.D. Cal. Sept. 26, 2022) ("There is no cause of action in California for unjust enrichment.") (citing *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003)).

June 9, 2009) (dismissing an unjust enrichment claim alleging "but for Defendants' unlawful conduct" as sounding in tort).

"Thus, the only basis on which Plaintiff could theoretically rely for an independent cause of action for unjust enrichment is a contractual relationship between the Plaintiff[s] and Defendant." *Debjo Sales, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 2015 WL 1969380, at *8 (D.N.J. Apr. 29, 2015) (bracket in original). Plaintiffs do not allege any such relationship. *See Julius Realty Corp. v. Thompson*, 2023 WL 2728786, at *5 (D.N.J. Mar. 31, 2023) (declining to reconsider the dismissal of an unjust enrichment claim on this basis).

### C. Plaintiffs Cannot Maintain an Unjust Enrichment Claim Having Pleaded an Adequate Remedy at Law.

"[A] plaintiff cannot sustain an unjust enrichment claim where there is an adequate remedy at law." *Ponzio*, 447 F. Supp. 3d at 259. Here, Plaintiffs seek treble damages under the Odometer Act and the NJCFA based on the same alleged conduct that unjustly enriched "Defendants." *Compare* ECF 1 (Compl.), ¶¶ 111-28 (alleging wrongful conduct under the Odometer Act and NJCFA through the repair or replacement of odometers without disclosing pre-service mileage on the vehicle or the cumulative mileage or that actual mileage was not known when transferring the vehicle), *with id.* at ¶ 130 (seeking unjust enrichment based on "Defendants' replacement and alteration of the odometers of the FedEx/Holman Vehicles, and Defendants not disclosing or providing required notice to purchasers"). Plaintiffs expressly incorporate into their unjust enrichment claim the allegations that they plead in support of alleged odometer and consumer fraud. *See id.* at ¶ 118 ("Plaintiffs repeat and reallege all of the foregoing.").

Plaintiffs do not allege in the Complaint that the monetary remedies they seek under their statutory fraud and consumer protection claims are inadequate. Nor do Plaintiffs allege facts showing that those monetary remedies are inadequate. Accordingly, Plaintiffs' unjust enrichment

claim fails as a matter of law and should be dismissed. *See Goodman*, 2023 WL 2368123, at *8 (granting a motion to dismiss an unjust enrichment claim because the plaintiffs sought adequate remedies at law under statutory fraud claims based on the same alleged conduct).

### D.  Plaintiffs Fail to Allege Facts that Establish All Essential Elements to a New Jersey Unjust Enrichment Claim.

"To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (N.J. 1994). Thus, among other elements, "'a claim for unjust enrichment [in New Jersey] requires a direct relationship between the parties.'" *Kaplan v. Gen. Elec. Co.*, 2023 WL 4288157, at *9 (D.N.J. June 30, 2023) (citing *Hammer v. Vital Pharms., Inc.*, 2012 WL 1018842, at *10 (D.N.J. Mar. 26, 2012)).

Here, Plaintiffs do not allege a direct relationship with FedEx, ARI, HAGI, or HFL. As previously explained, Plaintiffs allege that they are all ***indirect*** purchasers. ECF 1 (Compl.), ¶¶ 38, 53-54, 64-65, 75-76, 86-87 (alleging that FedEx would transfer title in the vehicles to "Holman" who sold the vehicles at auction to third parties from whom Plaintiffs purchased their vehicles); *see id.* at ¶ 98(a) (excluding "Defendants" from the proposed class, which are defined to include direct purchasers – the "auction houses, wholesalers, resellers, and retailers, as well as the subsidiary and parent companies of those entities"). The majority of courts in this District dismiss unjust enrichment claims where a plaintiff fails to establish a direct relationship. *See Zamfirova v. AMAG Pharms., Inc.*, 2021 WL 2103287, at *9 (D.N.J. May 25, 2021) (dismissing an unjust enrichment claim because "Plaintiffs have not alleged they purchased [the underlying product] directly from [the defendant]"); *Noble*, 2018 WL 801590, at *7 (dismissing the plaintiffs' unjust enrichment claim because "there is no direct relationship between [the parties]" and citing additional cases for same premise); *see Block*, 2016 WL 3032682, at *4 ("New Jersey law requires

a claim for unjust enrichment to allege a direct relationship between the conferrer of a benefit and the recipient.").

Plaintiffs also do not allege that they expected remuneration from FedEx, ARI, HAGI, or HFL. New Jersey "[c]ase law makes clear that an expectation of remuneration is required." *Hemy v. Perdue Farms, Inc.*, 2011 WL 6002463, at *22 (D.N.J. Nov. 30, 2011) (citing *VRG Corp.*, 135 N.J. at 554); *see Melzer v. Johnson & Johnson Consumer Inc.*, 2023 WL 3098633, at *7 (D.N.J. Apr. 26, 2023) ("[T]he unjust enrichment claim must fail because [the plaintiff] did not expect remuneration from [the defendant].").

Accordingly, Plaintiffs' unjust enrichment claim should be dismissed.

### E.  Choice of Law Principles Also Mandate the Dismissal of Plaintiffs' Nationwide Unjust Enrichment Claim.

As with Plaintiffs' NJCFA claim, New Jersey's two-step choice of law analysis demonstrates that New Jersey is not the state with the "most significant relationship" to Plaintiffs' unjust enrichment claim. *First*, state unjust enrichment laws, including Plaintiffs' home states (California, Florida, Virginia, and the District of Columbia), differ and materially conflict. *Pierre*, 2022 WL 596097, at *14 (recognizing the elements of unjust enrichment "'vary state by state'" (*quoting In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 912 (E.D. Pa. 2012)); *In re Actiq Sales & Mktg. Pracs. Litig.*, 307 F.R.D. 150, 163-66 (E.D. Pa. 2015) (finding material conflicts between the unjust enrichment laws of the sixteen states in which the named plaintiffs reside, which included California, Florida, Virginia, and New Jersey); *Montich*, 849 F. Supp. 2d at 459 (finding material conflicts between the unjust enrichment laws of New Jersey and California); *see In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 2023 WL 1818922, at *64-68 (D.N.J. Feb. 8, 2023) (finding material "variations" between state unjust enrichment laws). *Second*, New Jersey does not have the "most significant relationship" to Plaintiffs' unjust

enrichment claim for the same reasons explained above in connection with the NJCFA claim. Accordingly, the unjust enrichment claims should be dismissed.

### F.  The Civil Conspiracy Claim is Duplicative of the Odometer Act Claim.

Plaintiffs assert redundant statutory and common law conspiracy claims based on the same alleged conduct – odometer fraud. *Compare* ECF 1 (Compl.), ¶¶ 111-17, *with id.* at ¶¶ 134-39. Plaintiffs allege a conspiracy "to commit odometer fraud" in the "Background" section of the Complaint. *Id.* at ¶¶ 37-51. Plaintiffs incorporate those "Background" allegations into Count I, *id.* at ¶ 111, and then re-allege the same conspiracy to support their Odometer Act claims under §§ 32703, 32704, and 32705, *see id.* at ¶¶ 113-15. *See also* 49 U.S.C. § 32703(4) ("A person may not . . . conspire to violate this section or section 32704 or 32705"). Plaintiffs then incorporate the "Background" and Count I allegations into Count IV, *id.* at ¶ 134, only to re-allege the same conspiracy ***again*** – this time under an unidentified state's common law, *id.* at ¶¶ 134-39.

Plaintiffs' civil conspiracy claim is merely a recharacterized version of their conspiracy claims under the Odometer Act. Accordingly, the civil conspiracy claim should be dismissed.

### G.  Plaintiffs' Civil Conspiracy Claim Based on an Alleged NJCFA Violations Fails.

Plaintiffs assert a common law claim for "Conspiracy to Commit Odometer Fraud and Violate the New Jersey Consumer Fraud Act." *Id.* at p. 35 (heading for Count IV). "[T]he law uniformly requires that conspiracy claims be predicated upon an underlying tort that would be independently actionable against a single defendant." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999) (collecting cases). As explained above, Plaintiffs cannot pursue an NJCFA claim. As a result, Plaintiffs cannot pursue a conspiracy claim predicated on alleged violations of the NJCFA. Accordingly, that portion of this claim should be dismissed. *See*, *e.g.*, *In re Insulin Pricing Litig.*, 2021 WL 5980629, at *13 (D.N.J. Dec. 17, 2021) (dismissing state-law conspiracy claims to the extent that the underlying tort claims were also dismissed).

## IV.   PLAINTIFFS' DEMANDS FOR EQUITABLE RELIEF FAIL AS A MATTER OF LAW.

Plaintiffs demand multiple equitable remedies in this case. ECF 1 (Compl.), ¶¶ 117 (injunctive relief under the Odometer Act), 129-33 (unjust enrichment and restitution), Prayer for Relief (seeking restitution for and disgorgement of "ill-gotten gains"). Those demands for equitable relief fail because Plaintiffs do not plead an inadequate remedy at law.

As explained above, Plaintiffs cannot pursue unjust enrichment as an independent cause of action because, among other reasons, Plaintiffs failed to allege that the monetary damages they seek through their statutory fraud and consumer protection claims are inadequate. That prerequisite – the lack of an adequate remedy at law – is not limited to unjust enrichment and applies to any claim for equitable relief. *Younger v. Harris*, 401 U.S. 37, 43-44 (1971) ("[C]ourts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."); *Goadby v. Philadelphia Elec. Co.*, 639 F.2d 117, 122 (3d Cir. 1981) (reciting "the basic tenet of equity jurisprudence: if an adequate remedy at law exists, equitable relief will not be granted"). Thus, the lack of allegations concerning the inadequacy of Plaintiffs' damages demands is fatal to all of Plaintiffs' claims for equitable relief.

Additionally, Plaintiffs' demand for injunctive relief is irreparably flawed because Plaintiffs do not allege irreparable harm – another essential element to obtaining injunctive relief in addition to pleading and obtaining injunctive relief. *eBay Inc. v. MercExchange, LLC.*, 547 U.S. 388, 391 (2006) ("According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury . . . ."); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies").

Accordingly, Plaintiffs' demands for equitable relief should be dismissed.

26

## V.   PLAINTIFFS' DEMAND FOR PUNITIVE DAMAGES FAILS AS A MATTER OF LAW.

Plaintiffs demand punitive damages in their Prayer for Relief. ECF 1 (Compl.), p. 37 (Prayer for Relief). However, Plaintiffs are unable to seek punitive damages as a matter of law.

For the reasons provided above, Plaintiffs cannot maintain either of their common law claims. For their statutory claims, neither the Odometer Act nor the NJCFA expressly provide for the recovery of punitive damages. 49 U.S.C. § 32710 (Odometer Act); N.J.S.A. § 56:8-19 (NJCFA). The statutes do provide for treble damages, which Plaintiffs seek. ECF 1 (Compl.), p. 37. The grant of treble damages under both statutes serves the same function and purpose as punitive damages. *See Kasher L. Grp., LLC v. Ciox Health, LLC*, 2018 WL 4215004, at *7, n. 7 (D.N.J. Sept. 5, 2018) ("Even though in its prayer for relief Plaintiff seeks punitive damages, such damages are not available for its NJCFA claim."); *Richardson v. Bart's Car Store, Inc.*, 2014 WL 7184433, at *6 (S.D. Ind. Dec. 15, 2014) ("The trebling of actual damages in the Odometer Act *is* punitive damages." (emphasis in original)); *Mayline Enterprises, Inc. v. Milea Truck Sales Corp.*, 641 F. Supp. 2d 304, 309 (S.D. N.Y. 2009) (stating that the treble damages available under the Odometer Act "serves the same function as punitive damages"). Thus, punitive damages are not an available remedy provided by either statute and, in any event, are duplicative of the trebled damages that Plaintiffs already seek in connection with their statutory claims.

Accordingly, Plaintiffs' demand for punitive damages should be dismissed.

## VI.   ALL CLAIMS AGAINST THE "HOLMAN" DEFENDANTS FAIL AS A MATTER OF LAW BECAUSE THEY ARE ALL BASED ON IMPERMISSIBLE GROUP PLEADING ALLEGATIONS.

Plaintiffs improperly lump ARI, HAGI, and HFL together as "Holman" throughout the Complaint. This is not a case where the plaintiff is unable to distinguish related corporate defendants from one another. Plaintiffs specifically allege that ARI, HAGI, and HFL are separate entities with distinct business operations. ECF 1 (Compl.), ¶¶ 6-8, 28, 38 (alleging "ARI and HFL

operate Holman's Fleet & Mobility division"; "ARI holds New Jersey Motor Vehicle License #02750U"; and HAGI "includes automotive dealership, parts distribution, financial, and insurance service components"). Nor is this a case where the alleged fraud largely turns on personal knowledge of corporate internal affairs. Plaintiffs allege odometer fraud through the sale of vehicles ***at known public auctions***. *See id.* at ¶¶ 38 ("In the vast majority of cases, Holman would sell the FedEx/Holman Vehicles through one of about a half dozen large, regional automotive auctions throughout the nation."), 101 ("The members of the putative Class are ascertainable through resort to public sale, registration and title records, as well as the records required to be kept by auction houses under 49 C.F.R. 580.9.").

Nonetheless, Plaintiffs inexplicably fail to plead particular facts about the individual roles of ARI, HAGI, and HFL in the alleged odometer fraud scheme, and instead allege vaguely and generally that "Holman" purposefully replaced and zeroed odometers; "Holman" brought the vehicles to market; "Holman" sold the vehicles at auction; "Holman" completed the odometer disclosure section in the vehicle titles; "Holman" knew how many miles had been traveled by the vehicle; and "Holman" knew full well that the mileage reflected on the FedEx/Holman Vehicle's odometer was grossly understated. *Id.* at ¶¶ 32, 38-39, 53, 56, 64, 67, 75, 78, 86, 89. These indiscriminate allegations form the foundational odometer fraud scheme on which Plaintiffs' entire case is based and fail to satisfy federal pleading standards. "Even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants." *Shaw v. Hous. Auth. Of Camden*, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012). That is especially true when fraud is alleged. "When multiple defendants are involved, the complaint ***must*** plead with particularity by specifying the allegations of fraud applying to each defendant." *MDNet, Inc.*, 147 F. App'x at 245 (emphasis supplied); *see, e.g., Galicki v. New Jersey*, 2015 WL 3970297, at *2

(D.N.J. June 29, 2015) (dismissing a complaint alleging fraud because it "lacks any meaningful facts which establish each individual Defendant's liability for the misconduct alleged").

The insufficient nature of Plaintiffs' "group pleading" strategy against the "Holman" defendants is demonstrated plainly through HFL. As a "Holman" defendant, HFL allegedly participated in an odometer fraud scheme through which Plaintiffs were sold vehicles between April 2017 and September 2018. *See id.* at ¶¶ 54, 65, 75, 87. Only HFL did not exist in September 2018. Or September 2019. Or even September 2020. HFL was not formed until January 2021 – more than two years ***after*** HFL is alleged to have participated in the alleged odometer fraud scheme. *See* Declaration of Counsel, Ex. 2 (HFL Certificate of Formation); *see Shrieves v. Phila. Facilities Mgmt. Corp.*, 2020 WL 7240450, at *10, n. 13 (E.D. Pa. Dec. 8, 2020) (taking judicial notice of an entity's articles of incorporation in deciding a motion to dismiss). Plaintiffs' allegations that HFL conspired to defraud them or that HFL otherwise engaged in wrongful conduct are not just implausible – they are impossible and precisely why "group pleading" does not satisfy federal pleading requirements under the circumstances in this case. *See Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) ("Fed. R. Civ. P 9(b) requires plaintiffs to plead the circumstances of the alleged fraud with particularity to ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." (citations and internal quotation marks omitted).

Plaintiffs have failed to meet federal pleading standards with respect to their claims against ARI, HAGI, and HFL. Accordingly, the Complaint against them should be dismissed.

## VII. PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS AGAINST HFL.

As explained above, HFL was not formed until January 2021 making it is impossible for HFL to have engaged in odometer fraud or otherwise be involved in a scheme to commit odometer

fraud in connection with the vehicle sales to Plaintiffs between April 2017 and September 2018, more than two years after the latest alleged conduct underlying Plaintiffs' claims.

As a result, Plaintiffs lack standing to pursue, and have otherwise failed to allege sufficient facts to assert, their claims against HFL. *In re Valsartan*, 2021 WL 100204, at *13 ("[I]n order to establish standing in the class action context, for each named defendant, at least one named plaintiff must be able to allege an injury traceable to that defendant." (citing *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005), as amended (Sept. 22, 2005)); Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.").

Accordingly, Plaintiffs' claims against HFL should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, FedEx, ARI, HAGI, and HFL respectfully request that the Court grant the Motion and enter an order in the form provided (1) dismissing with prejudice the putative class allegations as to FedEx, ARI, HAGI, and HFL; (2) dismissing with prejudice all Counts as to ARI, HAGI, and HFL; (3) dismissing with prejudice Counts II, III, and IV as to FedEx; (4) dismissing with prejudice all of Plaintiffs' demands for equitable relief; and (5) dismissing with prejudice Plaintiffs' demand for punitive damages.

**FOX ROTHSCHILD LLP**

*/s/ Ryan T. Becker*
Ryan T. Becker, Esquire
Nathan M. Buchter, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA, 19103
T: (215) 299-2000 / F: (215) 299-2150
rbecker@foxrothschild.com
nbuchter@foxrothschild.com

Dated: August 11, 2023                    *Attorneys for Defendants*

30